# 11-5323,
## 12-4443

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**Sonia Dotson**
*Plaintiff-Appellant-Cross-Appellee,*

**v.**

**City of Syracuse, Timothy Gay, and Mark McArdle,**
*Defendants-Appellees-Cross-Appellants,*
**City of Syracuse Police Department, Patrick Harrington, Michael Rathbun, and Dennis DuVal,**
*Defendants-Appellees.*

On Appeal From No.  5:04-CV-1388
In the United States District Court for the Northern District of New York
Honorable Norman A. Mordue, Presiding

**PLAINTIFF-APPELLANT-CROSS-APPELLEE'S BRIEF**

A.J. Bosman, Esq.
BOSMAN LAW FIRM, L.L.C.
*Attorneys for Plaintiff-Appellant-*
*Cross-Appellee Sonia Dotson*
6599 Martin Street
Rome, New York 13440
Telephone: (315) 336-9130

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                                 iii

PRELIMINARY STATEMENT                                                          1

STATEMENT OF SUBJECT MATTER AND JURISDICTION              2

QUESTIONS PRESENTED                                                               2

STATEMENT OF THE FACTS                                                          3

     A. UNDERLYING FACTS                                                        3

     B.  COURSE OF THE PROCEEDINGS BELOW                       6

ARGUMENT                                                                                   9

POINT I                                                                                         9
THE DISTRICT COURT'S ORDER SUMMARILY
DISMISSING PLAINTIFF'S DISCRIMINATION AND
HOSTILE WORK ENVIRONMENT CLAIMS SHOULD
BE REVERSED.

     A.    The assignments to road duty were materially adverse and        10
          discriminatory.  The discrimination claims should
          not have been summarily dismissed.

     B.    Plaintiff's hostile work environment claims should                   14
          not have been summarily dismissed because (1) she was
          exposed to more than just pornography and (2) even if
          there were only the incidents of pornography, they were
          sufficiently severe to create a hostile work environment.

POINT II                                                                                      21
THE DISTRICT COURT'S ORDER SUMMARILY DISMISSING
PLAINTIFF'S RETALIATION CLAIMS OTHER THAN THOSE

BASED ON THE REQUISITIONING AND LISTENING
TO PLAINTIFF'S TELEPHONE CALLS SHOULD BE REVERSED.

A.    Plaintiff's retaliation claims based on the issuance of          21
numerous "counseling" memoranda; a "medical leave usage"
memorandum; draft disciplinary charges;  her direct
supervisor's refusal to speak with her and ostracization
of co-workers; and a threat of physical injury should not have been
summarily dismissed.

POINT III                                                            28
THE DISTRICT COURT'S ORDER GRANTING DEFENDANTS
A NEW TRIAL ON DAMAGES SHOULD BE VACATED AND
THE FIRST JURY'S AWARD OF DAMAGES REINSTATED.

A.    The lower court should not have disturbed the jury verdict,     28
which was sufficiently supported by evidence.

B.    The lower court should not have disturbed the jury verdict     32
on the basis of Plaintiff's lack of evidence corroborating her
emotional injuries.

CONCLUSION                                                           35

CERTIFICATE OF COMPLIANCE                                            36

## <u>TABLE OF AUTHORITIES</u>

Cases:

Arrowood Indem. Co. v. King, 699 F.3d 735, 739 (2d Cir. 2012)    9

Aulicino v. N.Y.C. Dept. of Homeless Servs., 580 F.3d 73, 83    15
    (2d Cir. 2009)

Barbetta v. Chemlawn Servs. Corp., 669 F. Supp. 569, 572-573    19
    (W.D.N.Y. 1987)

Brown v. City of Syracuse, 673 F.3d 141 (2d Cir. 2012)    14

Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)    22

Burlington Northern & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405,    22
    2414 (2006)

Cross v. NYC Transit Auth., 417 F.3d 241, 258 (2d Cir. 2005)    28

Dagnello v. Long Island R.R. Co., 193 F. Supp. 552, 553 (S.D.N.Y. 1960),    28
    aff'd on other grounds, 289 F.2d 797 (2d Cir. 1961)

Distasio v. Perkin Elmer Corp., 157 F.3d 55, 61 (2d Cir. 1998)    26

Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1330 (2d Cir. 1990)    29

Edwards v. Town of Huntington, No. 05-CV-339,    22
    2007 U.S. Dist. LEXIS 50074 (E.D.N.Y. July 11, 2007)

EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009)    20

Fink v. City of New York, 129 F. Supp. 2d 511, 538 (E.D.N.Y. 2001)    34

Fitzgerald v. Henderson, 251 F.3d 345, 360 (2d Cir. 2001)    26

Gibson v. American Broad. Cos., 892 F.2d 1128, 1134 (2d Cir. 1989)    11

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993)                    17,19

Hartley v. Pocono Mt. Reg'l Police Dep't, No.  3:CV-04-2045,            20
      2006 U.S. Dist. LEXIS 95838 at 20-27 (M.D. Pa. May 17, 2006)

Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003)         15

Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010)                      21

Jamison v. Chapman, No. 6:08-CV-856, 2009 U.S. Dist. LEXIS 104059,     22
      **20-21 (N.D.N.Y. Nov. 9, 2009)

Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 240 (2d Cir. 2007)   11

Kaytor v. Electric Boat Corp., 609 F.3d 537, 550 (2d Cir. 2010)        15,26

Lee v. City of Syracuse, 446 Fed. App. 319 (2d Cir. 2011)           27,27-28

Little v. Nat'l Broadcasting Co., 210 F.2d 330, 377 (2d Cir. 2002)     11

Lopez v. Flight Servs. & Sys., 2012 U.S. Dist. LEXIS 72112            12
      (W.D.N.Y. May 23, 2012)

McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012)          9

Mendez v. Starwood Hotels & Resorts Worldwide, Inc.,                  33
      746 F. Supp. 2d 575, 601 (S.D.N.Y. 2010)

Millea v. Metro-North R.R. Co., 658 F.3d 154, 165 (2d Cir. 2012)      23

Miner v. City of Glens Falls, 999 F.2d 655, 663 (2d Cir. 1993)        33,34

Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 577 (S.D.N.Y. 2010)  29

Olsen v. County of Nassau, 615 F. Supp. 2d 35, 49 (E.D.N.Y. 2009)     34

-iv-

## TABLE OF AUTHORITIES (CONTINUED)

Osorio v. Source Enterprises, Inc., No. 05 Civ. 10029,                33
    2007 U.S. Dist. LEXIS 18725 (S.D.N.Y. Mar. 2, 2007)

Patane v. Clark, 508 F.3d 106, 114 (2d Cir. 2007)                16,17

Patrolmen's Benevolent Ass'n v. City of New York, 310 F.3d 43,                33
    55 (2d Cir. 2002)

Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port                33
    Auth. of N.Y. & N.J., 681 F. Supp. 2d 456, 470 (S.D.N.Y. 2010)

Pucino v. Verizon Comm. Inc., 618 F.3d 112, 119-20 (2d Cir. 2010)                15

Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418-419                29-30,32
    (2d Cir. 2012)

Rangolan v. County of Nassau, 370 F.3d 239, 244 (2d Cir. 2004)                29

Raniola v. Bratton, 243 F.3d 610, 621-23 (2d Cir. 2001)                26

Redd v. NYS Div. of Parole, 678 F.3d 166, 173 (2d Cir. 2012)                9

Reimer v. Heritage Asset Mgmt., No. 97-CV-0565,                19
    1999 U.S. Dist. LEXIS 9295 at 5 (W.D.N.Y. 1999)

Richardson v. N.Y. State Dep't of Corr. Servs., 180 F.3d 426,                12,17,19
    444 (2d Cir. 1999)

Rivenburgh v. CSX Corp., No. 1:03-CV-1168,                29
    2006 U.S. Dist. LEXIS 62903 at 20 (N.D.N.Y Sept. 5, 2006)

Rivera v. Rochester Genesee Regional Transp. Auth.,                15
    No. 11-762-cv, 2012 U.S. App. LEXIS 26211,
    at *14 (2d Cir. Dec. 21, 2012)

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>Tillison v. Capitol Bus Co.</u>, No. 1:CV-06-2004,                    20
      2008 U.S. Dist. LEXIS 51851 at 18-19 (M.D. Pa. July 8, 2008)

<u>Valentin v. New York City</u>, No. 94 CV 3911,                    19
      1997 U.S. Dist. LEXIS 24059 at 6 (E.D.N.Y. 1997)

<u>Washington v. Davis</u>, 426 U.S. 229, 242 (1976)                    26

<u>Zeno v. Pine Plains Centr. Sch. Dist.</u>, No. 10-3604,                    28,33
      2012 U.S. App. LEXIS 24833, at *40 (2d Cir. Dec. 3, 2012)

Statutes:

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*                    2

28 U.S.C. § 1291                    2

28 U.S.C. § 1331                    2

28 U.S.C. § 1343                    2

Constitution:

U.S. Const. amend. XIV                    14

Rules:

Fed. R. Civ. P. 56(a)                    9

## PRELIMINARY STATEMENT

This is an appeal from the November 16, 2011 final judgment of the United States District Court for the Northern District of New York (Mordue, C.J. and J.) (A-2864).

On this appeal, Plaintiff-appellant-cross-appellee Sonia Dotson (hereinafter "Plaintiff") seeks review of two interlocutory orders entered prior to final judgment, to wit:  (1) the July 21, 2009 Memorandum-Decision and Order (A-1204) partially granting summary judgment to Defendants-appellees-cross-appellants City of Syracuse, Timothy Gay, and Mark McArdle and Defendants-appellees Dennis DuVal, Patrick Harrington, and Michael Rathbun (hereinafter "Defendants");  and (2) the March 2, 2011 Memorandum-Decision and Order (A-2437) granting Defendants' motion for remittitur and ordering a new trial on damages in the absence of Plaintiff's consent to remit her award from $450,000.00 to $50,000.00.

## STATEMENT OF SUBJECT MATTER AND JURISDICTION

This action arises under, among other laws, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. The district court properly exercised jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. The district court entered final judgment on November 16, 2011. (A-2864). Plaintiff timely filed a Notice of Appeal on December 15, 2011. (A-2868). Appellate jurisdiction over Plaintiff's appeal lies with this Court pursuant to 28 U.S.C. § 1291.

## QUESTIONS PRESENTED

1. Did the district court err in summarily dismissing Plaintiff's discrimination claims based on disparate work assignments where the record evidence showed road duty was materially adverse and given only to minorities?

2. Did the district court err in summarily dismissing Plaintiff's hostile work environment claims where the record evidence shows Plaintiff was exposed to pornography, constant comments of a sexual nature, and a gender biased workplace?

3. Did the district court err in summarily dismissing Plaintiff's retaliation claims in the form of numerous "counseling" memoranda; a "medical leave usage" memorandum; draft disciplinary charges; her direct supervisor's refusal to speak with her and ostracization of co-workers; and threat of physical injury?

4.  Did the district court err in granting remittitur where the evidence was sufficient to sustain the first jury's award of damages of $450,000.00?

## STATEMENT OF THE FACTS

**A.  Underlying Facts.**

Plaintiff Sonia Dotson is an Hispanic female employed by the City of Syracuse as a Community Service Officer ("C.S.O.").  (A-29).  She is married to Syracuse Police Officer Lonnie Dotson.  (A-989).

In 2002, Plaintiff was working the day shift at the Syracuse Police Department ("SPD") (A-546-51);  in the SPD, the day shift is the second platoon. (Id.).  Her direct supervisor was Defendant, then-Sergeant, now Captain, Timothy Gay.  (A-558).  The commanding officer was Defendant Mark McArdle, a captain and later, Defendant Michael Rathbun, also a captain.  (A-581).  Plaintiff's co-workers were C.S.O.s Harrington (White male), French (White female), and Reeves (Black male).  (A-978-79).

Plaintiff was disparately assigned road duty.  (A-79, 382, 611, 977-78). Plaintiff complained to Defendant Rathbun and she was falsely assured that the road duty assignments would start to be rotated.  (A-382).  Plaintiff and C.S.O. Reeves, an African-American, were the only two C.S.O.s regularly assigned road

-3-

duty.  (A-382, 409).

In the Spring of 2003, Plaintiff worked the desk where the pornography, sexual banter, sexually oriented magazines, and frequent comments about women and their bodies was a daily part of her work environment.  (A-77-80, 386, 387, 408-09, 560-67, 571, 573-74, 575, 976-88).

After Plaintiff first saw pornography on Defendant Harrington's computer, Plaintiff made a conscious effort to avoid it but the audio was turned on and Defendants Gay and Harrington would make comments about the movies and the women in them as they viewed the pornography.  (A-566, 571, 978, 979, 980). Specifically, "[w]hile the Defendants were watching pornography, they would make disgusting and demeaning noises and comments regarding women's breasts, their bodies, body hair, etc."  (A-979).

In opposition to summary judgment, Plaintiff affirmed she became so "upset" and "physically ill" that she had to go the women's room due to pornography being viewed.  (A-980).  This happened because Plaintiff turned around at her desk and observed Defendant Gay watching a pornographic movie "depicting a naked woman in high heels standing with one foot on a desk exposing her genitalia and a man behind her having intercourse with her."  (A-979-80). Plaintiff complained to Defendant Gay, stating "'that's disgusting' and turned

-4-

back around to [her] desk." (A-980).

On September 16, 2003, after an issue was made about a single sick day Plaintiff had taken as a result of her on-duty injury, Plaintiff spoke with her husband and a supervisor, Sergeant Rutha Chikowi about the disparate treatment and the presence of pornography in the workplace. (A-567-68, 981, 1946). Sergeant Chikowi suggested that Plaintiff contact SPD's Equal Employment Opportunity ("EEO") officer Rebecca Thompson. (A-568, 1947). Defendant Gay overheard Plaintiff's conversations and her stated intention to file a complaint with the EEO. (A-983, 2384). He and Defendant McArdle then requisitioned the tapes of those conversations, listened to them, and then drafted multiple disciplinary charges against Plaintiff calling for her suspension. (A-326-45, 749, 760).

Plaintiff submitted a memorandum to EEO officer Thompson on September 23, 2003. (A-386). She complained that Defendants Gay and Harrington were watching pornographic movies in her presence and requested remedial action be taken. (Id.).

Thereafter, on September 25, 2003, Plaintiff was given a "Medical Leave Usage" memorandum requiring her to obtain a doctor's note each time she was absent from work due to illness. (A-388). Defendant Gay admitted that he went

to Human Resources and had it issued after he heard Plaintiff's conversations with her husband and Sergeant Chikowi on September 16th. (A-401).

After Plaintiff complained of the pornography, Sergeant Gay refused to speak with her and her co-workers ostracized her. (A-981). They also made constant sarcastic and snide comments regarding her complaint, stating, inter alia, "oh we can't watch that" or "we can't say that ....we might get sued." (A-981; see also, 584-585). Additionally, Defendants escalated scrutiny of Plaintiff's performance. (A-981, 587-88, 593). Defendant Rathbun would sit and stare at Plaintiff and began "papering" her. (A-410-27; 981). Defendant Harrington commented that Plaintiff would "look good under the wheels of [his] truck." (A-443; 981, 985).

### B.  Course of the Proceedings Below.

The complaint was filed in the district court on December 4, 2004. (A-28). While Defendants answered the complaint (A-41), they moved for judgment on the pleadings, contending that Plaintiff's complaint failed to state a claim for relief which could be granted. (A-50). Plaintiff opposed Defendants' motion and cross-moved for leave to file an amended complaint which the district court granted. (A-52). With the exception of Plaintiff's supplemental state law claims

based on common law, the district court kept the complaint intact.  (A-54).

Defendants moved for summary judgment (A-102) while Plaintiff's counsel was tending to her terminally ill father in Florida.  (A-375).  Her father passed away shortly before the expiration of the deadline to file Plaintiff's opposition to the summary judgment motion and she requested a two week extension to respond.  (A-375).  The district court denied counsel's request, granting an insufficient amount of time to complete Plaintiff's response.  (A-10).

Almost two years later, the district court issued a Memorandum-Decision and Order on July 21, 2009 granting in part and denying in part Defendants' summary judgment motion.  (A-1204).  The district court found no triable issues of fact with the exception of a single act of retaliation, to wit: requisitioning and listening to Plaintiff's telephone calls with her husband and Sergeant Chikowi.  (A-1204).

Approximately one week prior to trial, Defendants produced an audio recording of Plaintiff's September 16th telephone conversations with her husband and Sergeant Chikowi.  (A-1304-05). Plaintiff was led to believe the tapes had been destroyed.  (Id.; 647-48).  An Order to Show Cause was presented to Judge Mordue requesting that Defendants be sanctioned for their failure to produce the audio recording during discovery.  (A-1298).  In addition to the audio recording,

memoranda containing admissions and evidence of discrimination and retaliation were withheld. (A-1301-08). Plaintiff argued prejudice in that such evidence was not disclosed prior to the eve of trial and further, could have been used as part of Plaintiff's opposition to Defendants' summary judgment motion. (Id.). The district court denied Plaintiff's Order to Show Cause and or sanction Defendants at all. (A-1398).

A week long trial was held in February 2010. (A-1405). The jury returned a verdict in favor of Plaintiff and awarded her $450,000.00 in compensatory damages. (A-2338). Defendants thereafter moved for judgment as a matter of law ("J.M.O.L.") and a new trial. (A-2343). While the district court denied the J.M.O.L. motion and declined to grant a new trial, it granted remittitur of the damages award based, in part, on the absence of medical evidence. (A-2437). The jury's award was declared excessive and a new trial on damages ordered unless Plaintiff accepted $50,000.00. (Id.). Plaintiff rejected the remitted amount and elected to have a new trial on damages. (A-19).

In November 2011, a trial limited to the issue of the amount of compensatory damages was held. (A-2669). While the court precluded Plaintiff's medical evidence (A-2659), the second jury awarded damages in the sum of $225,000.00 (A-2862) and an amended judgment was filed by the clerk on

-8-

November 16, 2011.  (A-2864).  Plaintiff filed a timely Notice of Appeal from the

amended judgment on December 15, 2011.  (A-2868).

Defendants filed an untimely post-judgment motion (A-2870) which the

district court denied.  (A-2881).  In its Memorandum-Decision and Order of

September 28, 2012, the district court confirmed that Defendants' motion was

untimely.  (Id.).

## ARGUMENT

### POINT I

**THE DISTRICT COURT'S ORDER SUMMARILY DISMISSING PLAINTIFF'S DISCRIMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE REVERSED.**

The standard of review for a summary judgment dismissal is de novo.

McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012); see also,

Arrowood Indem. Co. v. King, 699 F.3d 735, 739 (2d Cir. 2012).

Summary judgment is warranted only when "there is 'no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law.'"

Redd v. NYS Div. of Parole, 678 F.3d 166, 173 (2d Cir. 2012) (quoting Fed. R.

Civ. P. 56(a)).  "Summary judgment is inappropriate when the admissible evidence

in the record makes it arguable that the claim has merit."  Redd, at 174 (internal

citation and quotation omitted).

### A.  The assignments to road duty were materially adverse and discriminatory.  The discrimination claims should not have been summarily dismissed.

The first error in the district court's decision is that it adopted the facts as presented by Defendants and overlooked facts supporting Plaintiff's claims.  This the district court did with respect to Plaintiff's discrimination claims of discriminatory work assignments.

The record reveals facts from which a reasonable juror could conclude that the assignments to road duty were materially adverse.  For example, there was evidence that the assignment was dangerous.  As Plaintiff explained in her affidavit in opposition to summary judgment,

> My road patrol duties as a C.S.O. included being dispatched in a marked police car to calls that may or may not require a Police Officer. We do not carry weapons, not even mace. The lack of ability to carry a firearm is precisely one of the reasons why working the road is an undesirable assignment. It is risky and dangerous.  I responded to accidents, criminal mischiefs, larcenies, dog bites, stolen property and other complaints on a daily basis. I  frequently and regularly found myself in a position where an armed Police Officer was needed at the scene where I was dispatched and we would have to call for a police officer to come to the scene and handle the matter.  I was regularly assigned to road duty beginning in August 2001 until I was placed on light duty in March 2003 and September

-10-

2003.

(A-977).

The failure to consider this probative evidence of an adverse employment action constitutes reversible error.  The record also reveals that Plaintiff was injured in a car accident responding to a call.  (A-394, 569).  This fact was also not considered.

A reasonable jury could have found that Plaintiff's road duty assignments, which began in 2002, amounted to an adverse employment action. In <u>Kassner v. 2nd Ave. Delicatessen, Inc.</u>, 496 F.3d 229, 240 (2d Cir. 2007) this Court concluded that changes in work station and work shift assignments amounted  to actionable conduct. In <u>Gibson v. American Broad. Cos.</u>, 892 F.2d 1128, 1134 (2d Cir. 1989) this Court reversed summary judgment for an employer on a black employee's claim that a change in shift assignments constituted actionable conduct.  Finally, in <u>Little v. Nat'l Broadcasting Co.</u>, 210 F.2d 330, 377 (2d Cir. 2002) this Court concluded that "a shift assignment that makes normal life difficult for the employee" satisfied the adverse action criteria for discrimination. Plaintiff confirmed, and the lower court erred by declining to take into account, that her constant assignments to road duty made it impossible for her to pick up her daughter from school on time, and that the Defendants elected to continue

-11-

their practice of not rotating other qualified C.S.O.s through road duty even after Defendants were made aware of this fact.  (A-977-78).

The lower court's holding that the road duty assignments, as "part of plaintiff's job responsibilities", were incapable of amounting to adverse employment action flies in the face of Second Circuit precedent that "even the performance of normal job duties can amount to an adverse employment action if they are divvied between co-workers in a discriminatory fashion." <u>Lopez v. Flight Servs. & Sys.</u>, 2012 U.S. Dist. LEXIS 72112 (W.D.N.Y. May 23, 2012).  Plaintiff testified at her deposition and confirmed in her affidavit that between 2002 and 2003 she was the only Second Platoon C.S.O. assigned road duty, and that this state of affairs continued even after she alerted her supervisors to the hardship she was suffering as a result of their practices and the fact that other C.S.O.s were available to rotate through road duty.  (A-547-51, 611, 977-78).  In the absence of any explanation for the disparity in assignments, the only conclusion that can be drawn is that Defendants were motivated by a discriminatory animus.  <u>Richardson v. N.Y. State Dep't of Corr. Servs.</u>, 180 F.3d 426, 444 (2d Cir. 1999) (holding that transfer to a slightly different position under circumstances indicating intention to encourage resignation does constitute an adverse employment action).

Contrary to the district court's statement that "the record is devoid of any evidence that plaintiff's male and/or non-Hispanic co-workers were not assigned road duty or that she received a disproportionate share of such assignments" (A-1223), the record evidence was that plaintiff's male and non-Hispanic co-workers were in fact **not** assigned road duty and that Plaintiff received a **disparate** share of such assignments. (A-382-83, 611). This evidence was not contested by Defendants and they failed to satisfy even their modest burden in producing a legitimate, non-discriminatory reason. The mere contention that road duty assignments were part of a C.S.O.s job (see A-317) does not warrant their discriminatory assignment. However, even if the district court was correct in concluding that Defendants had satisfied their burden of production, it erred in finding that Plaintiff failed to present evidence of pretext. Plaintiff's evidence, which the court was obligated to accept, demonstrated that road duty assignments were not rotated (A-382, 611, 977); that there was an acknowledgment that they should have been (A-382); that Plaintiff and an African-American were the only ones regularly assigned road duty (A-382, 977); that the White male C.S.O. (Harrington) was never assigned road duty (A-382, 979); and that the White female C.S.O (French), who engaged in sexual banter with Sergeant Gay and her male co-workers and thus favored, was excused from such assignment. (A-382,

-13-

611, 640-41, 977, 998).  These facts were sufficient to defeat summary judgment.

Finally, even if the district court correctly concluded that the assignments to road duty did not rise to the level of an adverse employment action under Title VII, it neglected to consider them under the rubric for equal protection claims where no showing of an adverse employment action is required.  See Brown v. City of Syracuse, 673 F.3d 141 (2d Cir. 2012) (separately analyzing claims under Title VII and the equal protection clause).  Moreover, as discussed below, the district court was obligated to consider them as they were part of Plaintiff's work environment.

**B.  Plaintiff's hostile work environment claims should not have been summarily dismissed because (1) she was exposed to more than just pornography and (2) even if there were only the incidents of pornography, they were sufficiently severe to create a hostile work environment.**

The district court's order with respect to the hostile work environment claims is flawed because it brushed aside facts as not "specific" and refused to consider them.  It then looked at the facts it deemed worthy of consideration in a light **least** favorable to Plaintiff.

The district court admittedly did not consider the totality of the circumstances of Plaintiff's work environment.  That alone is reversible error as the court was obligated to examine the "'totality of the circumstances.'"  See

-14-

Rivera v. Rochester Genesee Regional Transp. Auth., No. 11-762-cv, 2012 U.S.
App. LEXIS 26211, at *14 (2d Cir. Dec. 21, 2012) (quoting Hayut v. State Univ.
of N.Y., 352 F.3d 733, 745 (2d Cir. 2003)).

This Court has repeatedly said that all acts must be assessed "'cumulatively
in order to obtain a realistic view of the work environment.'"  Rivera, at *18
(quoting Aulicino v. N.Y.C. Dept. of Homeless Servs., 580 F.3d 73, 83 (2d Cir.
2009)).  Thus, even if certain facts could be developed at trial with greater
specificity, that is not a reason to disregard them at the summary judgment stage.
See Pucino v. Verizon Comm. Inc., 618 F.3d 112, 119-20 (2d Cir. 2010) ("With
regard to the conclusions of Pucino's evidence as to the frequency of the abuse, a
plaintiff, to prevail, need not recount each and every instance of abuse to show
pervasiveness.");  Kaytor v. Electric Boat Corp., 609 F.3d 537, 550 (2d Cir. 2010)
("... Kaytor's ability or inability to recall details would doubtless affect the weight
that would be given to her testimony.  But the weighing of the evidence is a matter
for the factfinder at trial ...").

In addition to its failure to consider the road assignments as part of
Plaintiff's work environment, the district court erred in not considering evidence
that Defendants Gay and Harrington viewed pornography in-between the two
times Plaintiff made direct observation of the offensive material (A-571);  the

-15-

constant comments about women and their bodies (A-574; 978-79);  the presence of sexually oriented magazines (A-977);  the sexual banter between Gay, Harrington and other male officers and C.S.O. French (A-979, 640-41);  Defendant Rathbun's regular use of the words "babe" or "honey" to refer to female officers (A-983; 998, 1113) and his invitation to C.S.O. French to have sex with him on the desk in his office (A-983); and the EEO officer's advice not to be "so sensitive" and to learn to "let things go" (A-609, 986).  The district court's decision not to consider the totality of the circumstances was clear error.

Even in the absence of these additional facts, the district court impermissibly made a finding of fact that the incidents of pornography were insufficient as a matter of law to create a hostile work environment.  The district court trivialized Plaintiff's exposure to the pornography as a mere two incidents. This failure too merits reversal.  "[T]he mere presence of pornography in a workplace can alter the 'status' of women therein and is relevant to assessing the objective hostility of the environment."  Patane v. Clark, 508 F.3d 106, 114 (2d Cir. 2007).

It is well established that exposure to pornography in the workplace, particularly when coupled with vulgar or derogatory statements or actions, can create a hostile work environment.  In Patane, this Court determined that a jury

"could well conclude that Plaintiff was subject to frequent severely offensive conduct that interfered with her ability to perform her secretarial functions" where harassing conduct, including derogatory comments and exposure to pornography, was more than sporadic.  Id. at 114.

In considering only the incidents in which Plaintiff directly observed the pornography and focusing solely on the number of incidents, the district court abandoned its obligation to consider the factors identified by the Supreme Court and this Court in assessing whether an environment is sufficiently hostile:  "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted."  Richardson, 180 F.3d at 437 (quoting Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993)).  It is important to consider each factor as no "single factor" is dispositive.  Harris, at 23.

The incidents of exposure to the pornography occurred over the course of approximately four or five months.  (A-560).  Considered along with the other incidents of sex-based discrimination, as discussed above, it cannot be said that they were episodic or "sporadic".  The frequency factor weighs in favor of Plaintiff.

-17-

The severity factor also weighs in Plaintiff's favor. Paragraphs 12 and 13 of Plaintiff's affidavit in opposition to summary judgment speak for themselves: "While the Defendants were watching pornography, they would make disgusting and demeaning noises and comments regarding women's breasts, their bodies, body hair, and etc." (A-979); "I turned around at my desk once and saw him viewing a movie on Defendant Harrington's computer depicting a naked woman in high heels standing with one foot on a desk exposing her genitalia and a man behind her having intercourse with her." (A-979-80). This "is not conduct that is normal for the workplace." Redd, at 179.

The level of severity is also demonstrated by the fact that the viewing of the pornography was done in a small office and in close proximity to Plaintiff with the audio playing. (A-566).

The record evidence also demonstrated that the presence of the pornography interfered with Plaintiff's work and caused her psychological harm. Plaintiff had to leave work on one of the occasions in which Defendants were viewing pornography and had to make a "conscious[]" effort to avoid it. (A-980). She testified that it "bothered" her and that she was "upset" and became "physically ill". (A-980, 571). The audio recordings of Plaintiff's telephone calls with her husband and Sergeant Chikowi - which were withheld from Plaintiff and produced

-18-

on the eve of trial - where Plaintiff could be heard crying, also demonstrated how upset she was and the psychological harm caused by the hostile work environment.

In sum, the Harris/Richardson factors strongly weigh in favor of Plaintiff and it is reversible error not to engage in an analysis of these factors in a light most favorable to Plaintiff.

Viewing Plaintiff's allegations that she was subjected to pornography that objectified and degraded women in the light most favorable to her as the nonmoving party, there existed a genuine issue of material fact as to whether Plaintiff faced a hostile work environment.  See Reimer v. Heritage Asset Mgmt., No. 97-CV-0565, 1999 U.S. Dist. LEXIS 9295 at 5 (W.D.N.Y. 1999) (four episodes of gender-based harassment over a five-month period sufficient to defeat defendant's summary judgment motion); Valentin v. New York City, No. 94 CV 3911, 1997 U.S. Dist. LEXIS 24059 at 6 (E.D.N.Y. 1997) (finding sufficient evidence of a hostile work environment where plaintiff was subjected to, inter alia, daily use of sexually-explicit language, commentary by a supervisor of his sexual exploits and exposed to various pornographic images);  Barbetta v. Chemlawn Servs. Corp., 669 F. Supp. 569, 572-573 (W.D.N.Y. 1987) (denying defendant's summary judgment motion where plaintiff had presented evidence of vulgar comments by supervisors and the proliferation of "demeaning pornography");

-19-

Hartley v. Pocono Mt. Reg'l Police Dep't, No.  3:CV-04-2045, 2006 U.S. Dist.

LEXIS 95838 at 20-27 (M.D. Pa. May 17, 2006) (considering an incident in which

defendant exposed plaintiff to pornography in light of evidence that Plaintiff was

criticized without investigation into the complaints, that female employees were

propositioned by defendants, and that a "pervasive atmosphere of harassment"

existed at plaintiff's place of employment);  Tillison v. Capitol Bus Co., No.

1:CV-06-2004, 2008 U.S. Dist. LEXIS 51851 at 18-19 (M.D. Pa. July 8, 2008)

(actionable conduct found where plaintiff was shown pornography once, her

supervisor frequently invited others to look at pornography on his computer and

defendants made a number of derogatory comments to plaintiff); EEOC v. Cent.

Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (evidence that a defendant

exposed plaintiff to pornography and referred to women as "bitches" sufficient to

create a triable issue of fact).

# POINT II

## THE DISTRICT COURT'S ORDER SUMMARILY DISMISSING PLAINTIFF'S RETALIATION CLAIMS OTHER THAN THOSE BASED ON THE REQUISITIONING AND LISTENING TO PLAINTIFF'S TELEPHONE CALLS SHOULD BE REVERSED.

**A.  Plaintiff's retaliation claims based on the issuance of numerous "counseling" memoranda; a "medical leave usage" memorandum; draft disciplinary charges;  her direct supervisor's refusal to speak with her and ostracization of co-workers; and a threat of physical injury should not have been summarily dismissed.**

The district court separately analyzed each act of retaliation without considering their cumulative effect.  This was error.  "[T]he alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable."  Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010).  The Hicks case was decided shortly before commencement of the first trial in this case.  Citing Hicks, Plaintiff's  counsel alerted the district court to its error yet the court stubbornly refused to disturb its prior rulings (A-2223-27).  This Court should reverse the summary dismissal since, even assuming that any one of the above acts alone could not dissuade a reasonable worker from complaining or reporting discrimination, their cumulative effect certainly could.

-21-

It is now settled that the standard for demonstrating a materially adverse employment action is less stringent under Title VII's anti-retaliation provisions.  See <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 126 S.Ct. 2405, 2414 (2006) ("<u>Burlington Northern</u>").  To satisfy the third prong, a plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Id</u>. at 2415 (internal quotation marks and citations omitted).  This anti-retaliation provision is construed broadly.  See <u>Edwards v. Town of Huntington</u>, No. 05-CV-339, 2007 U.S. Dist. LEXIS 50074 (E.D.N.Y. July 11, 2007) (employer's retaliatory decision to require a doctor's note for each absence of an employee is alone sufficient to constitute an adverse action under Title VII's anti-retaliation provision); <u>Jamison v. Chapman</u>, No. 6:08-CV-856, 2009 U.S. Dist. LEXIS 104059, **20-21 (N.D.N.Y. Nov. 9, 2009) (an employer's decision to a summon a State Trooper to an employee's home is in and of itself an adverse action.).

The district court rejected as lacking material adversity Sergeant Gay's refusal to speak with Plaintiff and the ostracization by co-workers (A-1238).  The Court did not consider the draft disciplinary charges (A-326-45) or the threat of physical injury  (A-443, 981).  The district court even held that the burgeoning

-22-

"counseling" memoranda (A-410-27) were not adverse actions.  This was error and the district court's decision should be set aside.

Its decision with respect to the "counseling" memoranda not being adverse actions is in direct conflict with this Court's holding that a letter of reprimand issued in retaliation for protected activity **alone** is an adverse action.  See Millea v. Metro-North R.R. Co., 658 F.3d 154, 165 (2d Cir. 2012).  This is so even if the reprimand  "does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently."  Id.

With respect to the "counseling" memoranda and the "medical leave usage" memorandum, the court alternatively found that Defendants offered legitimate, non-retaliatory reasons to warrant their actions and that Plaintiff failed to show pretext.  (A-1236-38).

The district court ignored Plaintiff's evidence that Defendant Rathbun was motivated by retaliation in issuing the "counseling" memoranda.  First, the district court failed to credit Plaintiff's testimony that Rathbun sat and stared at her and sought to find fault with her work.  (A-981).  She observed him monitoring her.  (Id.).  Second, the district court completely ignored the evidence that Rathbun was similarly critical of the performance of two other female SPD officers only after they complained of discrimination.  (A-998, 1113).

-23-

In her affidavit, SPD Sergeant Therese Lore stated that,

> After I complained about discrimination, I was assigned to a position under Michael Rathbun.  He then subjected me to intense scrutiny, retaliation, and began finding fault with my work performance and wrote numerous memoranda and disciplinary actions critical of my performance.  Michael Rathbun has a longstanding reputation of being a sexist. He had repeatedly called me and other female officers "babe" or "hon" even after he was admonished by me for doing so.

(A-1113).

In her affidavit, SPD Officer Katherine Lee stated that,

> In October 2005, I complained about discriminatory remarks made about me by Officer Richard Douglas. [He called her, among other things, a "psychotic cunt"].  Captain Rathbun deliberately misconstrued my complaint and determined it was unfounded.  I wrote to Captain Rathbun and asked him to address my complaint that Officer Douglas was making offending, derogatory and sexual comments about me.  Captain Rathbun did not respond to my memo.  Thereafter, I became the subject of an Internal Affairs investigation into preposterous allegations and ordered by Captain Rathbun to write a memo addressing them ...

(A-998).

Considered together with the fact that all of Rathbun's memos and/or reprimands followed Plaintiff's in-house EEO complaint of September 22, 2003 (see A-386, 410-27), this solid evidence of a pattern of retaliatory conduct of Rathbun  was sufficient to create genuine issues of material fact with respect to

-24-

pretext.  The district court's failure to consider this evidence at all, much less in a light most favorable to Plaintiff, merits reversal.

With respect to the "medical leave usage" memorandum (A-388), the district court here again ignored evidence of pretext.   Defendant Gay admits (A-401) that he was the one who prompted the issuance of the "Medical Leave Usage" memorandum and he was aware that Plaintiff intended to file a complaint about pornography as of  September 16, 2003 (A-983, 2384).  He wrote in a memo to Captain Galvin that: "Only recently, and subsequent to the staff meeting of 19Sep03, were CSOs French and Dotson served with notice that an excuse would be required for each and every sick day and it only occurred because I went, personally, to Human Resources and directed it be accomplished now." (A-401).

This is significant as Gay thereafter recounted that there was discussion about Plaintiff's complaint at the September 19th meeting where it was "shared openly" that "[t]he obvious intent of [Plaintiff's complaint about the pornography] was [to] prevent the progression of two disciplinary actions being take[n] against [her]".  (A-401).

Since he was the subject of Plaintiff's complaint, and he participated in a meeting where her complaint was "openly" undermined, Gay's motivation for prompting Human Resources to issue the memorandum at the time he did should

-25-

not have been resolved as a matter of law.  See, <u>Kaytor</u>, at 548 (the question

whether impermissible considerations played a role in the challenged actions calls

for an assessment of motive and credibility unsuitable for resolution as a matter of

law) (citing <u>Brown v. Henderson</u>, 257 F.3d 246, 251 (2d Cir. 2001), <u>Washington</u>

<u>v. Davis</u>, 426 U.S. 229, 242 (1976), <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 360

(2d Cir. 2001), <u>Distasio v. Perkin Elmer Corp.</u>, 157 F.3d 55, 61 (2d Cir. 1998)).

Additionally, since the district court found triable issues of fact relative to

the instance of retaliation involving the requisitioning and listening to Plaintiff's

telephone calls (A-1239-40), summary judgment should have been denied with

respect to this act of retaliation as "... proof of instances of retaliation by the

supervisor ..., a rational juror could permissibly infer that his entire alleged pattern

of [retaliation] against [the plaintiff] was motivated by [her protected activity],

even though some of the [conduct] was not [overt]." <u>Kaytor</u>, at 548 (citing

<u>Raniola v. Bratton</u>, 243 F.3d 610, 621-23 (2d Cir. 2001)).

The numerous memoranda that were issued to Plaintiff by Defendants

following her complaints of discrimination collectively represent 10 memos or

reprimands.  (A-388, 397, 410-27; 981). While one or two individual memos in

isolation may not necessarily be conclusive evidence of retaliation, it is evident

-26-

that the explosion of disciplinary memos is difficult to justify absent retaliation and pretextual excuse.

Finally, the district court erroneously determined that municipal liability could only attach with evidence that SPD retaliated against other employees in the **exact same manner** in which it retaliated against Plaintiff.  (A-1244).  There is no legal basis for this requirement.  In <u>Lee v. City of Syracuse</u>, 446 Fed. App. 319 (2d Cir. 2011) this Court affirmed a judgment against the City of Syracuse based, in part, on a finding of a jury that the SPD has a custom or policy of retaliating against employees for complaining of discrimination.  <u>Id</u>. at 319.  <u>Lee</u> is persuasive authority to find error in the district court's order.  See <u>id</u>. at 323 ("... defendants argue that the court abused its discretion by admitting testimony by other female Syracuse Police Department officers regarding their own experiences of being retaliated against after complaining about gender discrimination. Defendants argue that the testimony of two of the witnesses was unhelpful to plaintiff's <u>Monell</u> claim because those officers were not disciplined after complaining about gender discrimination, but rather were retaliated against in other ways.  However, the jury was not instructed that it had to find a policy of retaliation by discipline.  Rather, the charge **correctly** asked the jury to determine whether the Department 'has a pervasive and widespread custom or policy of

-27-

retaliating against police officers who complain of discrimination.'") (emphasis added).

## POINT III

**THE DISTRICT COURT'S ORDER GRANTING DEFENDANTS A NEW TRIAL ON DAMAGES SHOULD BE VACATED AND THE FIRST JURY'S AWARD OF DAMAGES REINSTATED.**

The standard of review for a decision granting a new trial on the basis that a damages award is excessive is abuse of discretion.  Zeno v. Pine Plains Centr. Sch. Dist., No. 10-3604, 2012 U.S. App. LEXIS 24833, at *40 (2d Cir. Dec. 3, 2012); Cross v. NYC Transit Auth., 417 F.3d 241, 258 (2d Cir. 2005).

**A. The lower court should not have disturbed the jury verdict, which was sufficiently supported by evidence.**

"The primary responsibility for the assessment of damages rests upon the jury, which is allowed a wide area of discretion . . . Even were the Court to disagree with the amount of the award, it would not be justified in substituting its judgment for that of the combined experience of twelve jurors unless it 'conscientiously [believed] that the jury has exceeded the bounds of propriety.'" Dagnello v. Long Island R.R. Co., 193 F. Supp. 552, 553 (S.D.N.Y. 1960) (citation omitted), aff'd on other grounds, 289 F.2d 797 (2d Cir. 1961).  "[T]he law

-28-

has traditionally deferred to the decision of a jury of laymen drawn from the community at large, and not to the 'seasoned judgment' of the trial judge." Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1330 (2d Cir. 1990). Courts should use the "least intrusive standard for calculating a remittitur." Id. Where the "argument for remittitur is that the award is 'intrinsically excessive,' but the excess is 'not attributable to a discernable error,' the Court may reduce the award 'only to the maximum amount that would be upheld . . . as not excessive.'" Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 577 (S.D.N.Y. 2010) citing Rangolan v. County of Nassau, 370 F.3d 239, 244 (2d Cir. 2004) (internal citations omitted). "Thus, the Court will 'not reduce [the] verdict to less than the maximum previously held to be reasonable for injuries of similar severity.'" Id. at 577. Moreover, a court reviewing a jury award must view "the evidence pertaining to pain and suffering in the light most favorable to the plaintiff [.]" Rivenburgh v. CSX Corp., No. 1:03-CV-1168, 2006 U.S. Dist. LEXIS 62903 at 20 (N.D.N.Y Sept. 5, 2006) (internal quotation marks and citation omitted).

"Indeed, [the Court] must be as faithful to the jury's verdict as possible." Id.; Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1330 (2d Cir. 1990). A jury's evaluation of witness credibility is to be accorded a "high degree of deference" and jury verdicts should be disturbed only "with great infrequency." Raedle v.

-29-

Credit Agricole Indosuez, 670 F.3d 411, 418-419 (2d Cir. 2012).  Where, as here, a verdict is predicated almost entirely on the jury's assessments of credibility, "such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice."  Id.

In the present case the jury's damages award was based on its assessment of injury, the credibility of plaintiff,  her husband (Lonnie Dotson) and Mrs. Rutha DeJesus (formerly Chikowi).

Plaintiff provided ample evidence that she experienced significant psychological and physiological trauma as a result of the Defendants' retaliation. Plaintiff testified, inter alia, that (a) she was extremely upset and felt watched, exposed, naked and embarrassed (A-2386), (b) she treated with a physician for depression who prescribed her Cymbalta (A-2388), (c) her relationship with her husband, her children, and other officers suffered as a result of the retaliation (A-2387), (d) she "... [felt] like they're always watching me and judging me"  (id.), and (e) Defendants' actions destroyed her ability to "trust" anyone (A-2390).

Lonnie Dotson testified that his wife used to be "energetic, ... always ready and raring to go places, do things, very happy person" (A-2394), but that her affect changed after being retaliated against.  She constantly cried, slept and was always tired.  (id.).   He noted that Plaintiff "distanced herself from [him] and the

-30-

children." (id.).  Mr. Dotson testified "there would be times where I'd be speaking to her, you know, she'd be fine one minute, I'd go away, come back, she'd be in tears." (id.).  He provided a gripping depiction of the depth of Plaintiff's anguish, and described how in late 2003 he came home and found his wife "barricaded" in their bedroom:  "I went upstairs and my door was barricaded shut.  I mean I couldn't open the door.  When I pushed the door open, she had a chair up against the door, she was in bed with a golf club and a bat, there was a knife on the night stand.  You know, I looked at her, what's going on?  She had the phone next to her and she was afraid, she said she didn't trust the Syracuse Police Department."  (A-2394).  She was not herself.  (A-2398).  "She was betrayed."  (A-2401).   Mr. Dotson further testified that Plaintiff's condition continued deteriorated between 2003 and the present (A-2398).

Mrs. Rutha DeJesus also testified and described how Plaintiff "lost it", "broke down" (A-2401), "screamed a little bit [and] cried a little bit." (id.). According to Mrs. DeJesus, when she and Plaintiff "went into the bathroom, she bent over, she threw up, her eyes were bloodshot afterward, you know, how when you throw up sometimes I think it bursts an eye, a vessel in your eyeball and stuff and she was just pitiful."  (A-2402).

-31-

"The verdict, grounded in this fashion in the record, cannot be said to have been either egregious or a serious miscarriage of justice. In granting the Rule 59 motion, the district court abused its discretion." <u>Raedle</u>, 670 F.3d at 420.

In sum, the Plaintiff's testimony, the testimony of her husband and that of Mrs. DeJesus supported the careful and considered verdict to make Plaintiff whole. When the evidence is viewed in the light most favorable to Plaintiff, the jury's verdict was sufficiently supported and should not have been disturbed.

**B. The lower court should not have disturbed the jury verdict on the basis of Plaintiff's lack of evidence corroborating her emotional injuries.**

The lower court erred inasmuch as it would have required Plaintiff to show that she received "medical or psychological treatment for her alleged emotional injuries as a result of the retaliation", either through expert testimony or the tendering into evidence of medical records. (A-2473). Specifically, the Court grossly overstated the significance of the fact that Plaintiff's use of Cymbalta was uncorroborated, as well as the fact that Plaintiff did not start taking that particular anti-depressant until five years subsequent to the traumatic incidents of 2003.[1]

---

[1] Despite Judge Mordue's faulting of Plaintiff's evidence, he refused to allow Plaintiff to offer evidence of medical records or treatment during the re-trial. (A-2659).

With respect to the former, Plaintiff notes the well-established rule that "a court is not required to remit a large non-economic damage award, even where evidence of emotional damage consists solely of plaintiff's testimony." Mendez v. Starwood Hotels & Resorts Worldwide, Inc., 746 F. Supp. 2d 575, 601 (S.D.N.Y. 2010) (citing Osorio v. Source Enterprises, Inc., No. 05 Civ. 10029, 2007 U.S. Dist. LEXIS 18725 (S.D.N.Y. Mar. 2, 2007)). Additionally, "evidence of medical attention is not required to establish damages for emotional distress." Zeno v. Pine Plains Cent. Sch. Dist., 2012 U.S. App. LEXIS 24833 (2d Cir. Dec. 3, 2012) citing Miner v. City of Glens Falls, 999 F.2d 655, 663 (2d Cir. 1993). See also Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J., 681 F. Supp. 2d 456, 470 (S.D.N.Y. 2010) (holding that "'competent evidence' is not limited to medical evidence; the award should be considered in light of the 'circumstances of the violation itself.'") citing Patrolmen's Benevolent Ass'n v. City of New York, 310 F.3d 43, 55 (2d Cir. 2002).

The lower court holds Plaintiff to an impossible standard when it suggests that Plaintiff, in order to present credible evidence of damages, should have immediately begun a course of anti-depressants. Plaintiff notes that she is neither a physician nor a psychologist. Certainly Plaintiff had no reason to believe that anti-depressants would shield her from Defendants' acts of retaliation and

-33-

harassment, or the consequences thereof.  "Where there was no reason to expect that medicines or counseling could dispel the trauma of losing, among other things, one's professional standing in the community [...] and one's income" a lack of medical evidence will not cut in favor of remittitur.  Miner, 999 F.2d at 663 (2d Cir. 1993) (disabusing defendants of the notion that "this Circuit requires some evidence of medical attention to support a claim of emotional distress").  The absence of evidence of medical or psychological counseling "should not necessarily [lead] either a jury or this court to conclude that [...] symptoms were somehow more likely to be fabricated or insignificant."  Fink v. City of New York, 129 F. Supp. 2d 511, 538 (E.D.N.Y. 2001).  On these facts, therefore, the absence of "medical" evidence should not be used as a sword against Plaintiff.

Courts in this Circuit have routinely found that awards ranging from $100,000 to $500,000 are not excessive for significant emotional distress damages. See e.g. Olsen v. County of Nassau, 615 F. Supp. 2d 35, 49 (E.D.N.Y. 2009) (awards of $500,000, $400,000 and $100,000 to three plaintiffs on Title VII and Section 1983 claims were not excessive).  Plaintiff therefore respectfully requests that this Court reverse the decision of the lower court granting remittitur of the jury's $450,000 award.

## <u>CONCLUSION</u>

In summary, Plaintiff-Appellant-Cross-Appellee Sonia Dotson respectfully requests that this Court vacate the dismissal of her discrimination and hostile work environment claims as well as her retaliation claims which were not tried and remand same for trial.  Additionally, Mrs. Dotson respectfully requests this Court reverse the district court's order granting remittitur of the first jury's award and order the reinstatement of same.

Respectfully submitted,

 s/A.J. Bosman

_____

A.J. Bosman, Esq.
Bosman Law Firm, L.L.C.
*Attorneys for Plaintiff-Appellant-*
*Cross-Appellee*
Office and Post Office Address:
6599 Martin Street
Rome, New York 13440
Telephone: (315) 336-9130
Facsimile: (315) 336-9100

Dated: January 17, 2013

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(b)(i) because this brief contains 7,420 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(a)(7)(b)(iii).

s/A.J. Bosman
_____
A.J. Bosman, Esq.

DATED: January 17, 2013